LAW OFFICE OF JOSEPH DAVID MANUEL
Joseph David Manuel, Esq. (Bar No. 305006)
josephdm@jdmanlaw.com
4010 Truxel Road, Ste. 175
Sacramento, CA 95834
Telephone: (916)504-2620
Facsimile: (916)264-9458

UNITED STATES DISTRICT COURT FOR

THE EASTERN DISTRICT OF CALIFORNIA

JULINDA KIRBY, individually; SALISA LEGG, individually; E.P., Y.P., and S.P., minors, by and through their guardian ad litem JULINDA KIRBY; D.L., a minor, by and through her guardian ad litem SALISA LEGG; KATALINA ARELLANO; LUIS F. LEGG JR.; JASON DRAKE BARAJAS; CELINES PETROSIAN; KAIDEN UN-SMITH; and RINA UN

Plaintiffs,

vs.

CITY OF STOCKTON, Chief STANLEY MCFADDEN, Officer KYLE RIBERA, Officer RUBEN RILLON, DOES 1 to 10,

Defendant(s)

Case No.:

**COMPLAINT FOR DAMAGES**

1. Fourth Amendment – Excessive Force (42 U.S.C. § 1983)
2. Fourth Amendment – Unlawful Seizure (42 U.S.C. § 1983)
3. Fourteenth Amendment – Substantive Due Process – Failure to Protect (42 U.S.C. § 1983)
4. Fourteenth Amendment – Interference with Familial Relationship (42 U.S.C. § 1983)
5. Monell Liability – Unconstitutional Custom, Practice, or Policy (42 U.S.C. § 1983)
6. Monell Liability – Failure to Train (42 U.S.C. § 1983)
7. Monell Liability – Ratification (42 U.S.C. § 1983)
8. Violation of Bane Civil Rights Act (Cal. Civ. Code § 52.1)
9. Battery
10. Assault
11. False Imprisonment
12. Intentional Infliction of Emotional Distress
13. Negligent Infliction of Emotional Distress
14. Negligence
15. Discrimination on the Basis of Race (U.S. Const., Amend. XIV; 42 U.S.C. § 1983)

## I. INTRODUCTION

1. This action arises from the wrongful and unconstitutional conduct of Stockton Police Department officers who, on September 9, 2025, conducted a so-called "proactive vehicle checkout" in a quiet residential cul-de-sac where families and children were gathered outside their homes on a pleasant early autumn evening. Without warning, justification, or legal authority, officers pointed loaded firearms directly at innocent bystanders, including young children, detained and handcuffed minors for hours without cause, physically assaulted residents with batons, and shot and killed Rocco Robinson in front of numerous witnesses, including four minor children. The officers' conduct violated clearly established constitutional rights and inflicted severe and lasting psychological trauma on all Plaintiffs, particularly the minor children who witnessed the killing and had guns pointed directly at them.

## II. JURISDICTION AND VENUE

2. This Court has original jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (civil rights jurisdiction). Plaintiffs assert claims arising under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

3. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

4. Pursuant to 28 U.S.C. section 1391(b)(1)-(2) and section 1391(c)(2), venue is proper in the United States District Court for the Eastern District of California, Sacramento Division, because defendants reside in San Joaquin County, California, and all incidents, events, and occurrences giving rise to this action occurred in San Joaquin County, California, which is within the Eastern District of California pursuant to 28 U.S.C. § 84(a).

5. This case is properly assigned to the Sacramento Division of the Eastern District of California pursuant to Local Rule 120(d) because all events giving rise to the claims occurred in San Joaquin County, which is within the Sacramento Division.

## III. ADMINISTRATIVE PREREQUISITES

6. Plaintiffs have complied with the administrative tort claim requirements under California Government Code sections 910 et seq. Plaintiffs presented a Government Tort Claim to the City of Stockton on January 29, 2026. The City of Stockton, through its claims administrator, George Hills Company, Inc., rejected the claim in writing and served Notices of Rejection on Plaintiffs by mail on March 31, 2026 and April 1, 2026. This action is timely filed within six months of service of the Notices of Rejection pursuant to California Government Code section 945.6(a)(1). As to Plaintiffs Luis F. Legg Jr. and Y.P., no Notice of Rejection has been served; this action is timely filed as to these Plaintiffs within two years of accrual pursuant to California Government Code section 945.6(a)(2).

## IV. PARTIES

A. Plaintiffs

7. Plaintiff JULINDA KIRBY is a resident of Stockton, California, residing at 1233 Doray Court. Ms. Kirby is the mother and legal guardian of minor Plaintiffs E.P., Y.P., and S.P. At all times relevant to this complaint, Ms. Kirby and her children resided at their home at 1233 Doray Court, Stockton, California. Ms. Kirby brings this action individually for violations of her own constitutional rights and as guardian ad litem on behalf of her minor children.

8. Plaintiff E.P. is a minor child. E.P. resided at 1233 Doray Court, Stockton, California at the time of the incident. E.P. brings this action through his guardian ad litem, Julinda Kirby, his mother.

9. Plaintiff Y.P. is a minor child. Y.P. resided at 1233 Doray Court, Stockton, California at the time of the incident. Y.P. brings this action through her guardian ad litem, Julinda Kirby, her mother.

10. Plaintiff S.P. is a minor child. S.P. resided at 1233 Doray Court, Stockton, California at the time of the incident. S.P. brings this action through her guardian ad litem, Julinda Kirby, her mother.

11. Plaintiff Salisa Legg is a resident of Stockton, California, residing at 1233 Doray Court. Ms. Legg is the mother and legal guardian of minor Plaintiff D.L. At all times relevant to this complaint, Ms. Legg and her child resided at 1233 Doray Court, Stockton, California. Ms.

Legg brings this action individually for violations of her own constitutional rights and as guardian ad litem on behalf of her minor child.

12. Plaintiff D.L. is a minor child. D.L. resided at 1233 Doray Court, Stockton, California at the time of the incident. D.L. brings this action through her guardian ad litem, Salisa Legg, her mother.

13. Plaintiff KATALINA ARELLANO is resident of Stockton, California. At the time of the incident, Ms. Arellano was visiting family at 1236 Doray Court and witnessed the shooting of Rocco Robinson, her relative. Ms. Arellano was physically assaulted by officers who shoved her with a baton when she inquired about the welfare of her brother.

14. Plaintiff LUIS F. LEGG JR. is a resident of Stockton, California, residing at 1233 Doray Court. Mr. Legg was unlawfully handcuffed and detained by officers without reasonable suspicion or probable cause while he was in his own residential neighborhood.

15. Plaintiff JASON DRAKE BARAJAS is resident of Sacramento, California. At the time of the incident, Mr. Barajas was visiting family at the Doray Court residence and witnessed the shooting of Rocco Robinson at close range.

16. Plaintiff CELINES PETROSIAN is a resident of Stockton, California, residing at 2855 Pixie Drive. At the time of the incident Mr. Petrosian was present in the immediate vicinity of the shooting and personally witnessed the shooting of Rocco Robinson.

17. Plaintiff KAIDEN UN-SMITH is a resident of Stockton, California, residing at 1236 Doray Court. Mr. Un-Smith witnessed the shooting of Rocco Robinson in his immediate residential neighborhood.

18. Plaintiff RINA UN is a resident of Stockton, California, residing at 1236 Doray Court. Ms. Un witnessed the shooting of Rocco Robinson in her immediate residential neighborhood.

19. All Plaintiffs are citizens of the United States. All Plaintiffs suffered violations of their constitutional rights and emotional and psychological injuries as a direct and proximate result of Defendants' wrongful conduct.

B. Defendants

20. Defendant City of Stockton is a municipal corporation organized under the laws of the State of California, located in San Joaquin County. The City is responsible for the operation,

policies, practices, and customs of the Stockton Police Department. At all times material herein, Defendant City of Stockton acted under color of state law and is liable for the acts and omissions of its police officers pursuant to California Government Code section 815.2.

21. Defendant Stanley McFadden is, and at all times material herein was, the Chief of the Stockton Police Department. Chief McFadden is sued in his individual and official capacities. As Chief of Police, Defendant McFadden is a final policymaking authority for the City of Stockton with respect to police department policies, practices, training, supervision, and discipline. At all times material herein, Defendant McFadden acted under color of state law and within the scope of his employment.

22. Defendant Kyle Ribera is, and at all times material herein was, a police officer employed by the Stockton Police Department and the City of Stockton. Officer Ribera is sued in his individual and official capacities. At all times material herein, Defendant Ribera acted under color of state law and within the scope of his employment as a peace officer.

23. Defendant Ruben Rillon is, and at all times material herein was, a police officer employed by the Stockton Police Department and the City of Stockton. Officer Rillon is sued in his individual and official capacities. At all times material herein, Defendant Rillon acted under color of state law and within the scope of his employment as a peace officer.

24. Defendants DOES 1 through 10, inclusive, are Stockton Police Department officers, supervisors, and officials whose true names and capacities are presently unknown to Plaintiffs, who therefore sue these Defendants by fictitious names. Plaintiffs are informed and believe, and on that basis allege, that each Doe Defendant was present at or responded to Doray Court on September 9, 2025 and personally participated in one or more of the acts alleged herein, and/or supervised, directed, ratified, or failed to intervene in that conduct. The precise identity of each such officer, and the precise act attributable to each, is presently unknown to Plaintiffs because the body-worn camera recordings, in-car video, radio traffic and computer-aided dispatch records, incident and supplemental reports, use-of-force documentation, scene logs, and officer-involved-shooting investigation materials that identify the officers present and record their individual conduct are in the exclusive possession, custody, and control of Defendants and

have not been disclosed to Plaintiffs. These Defendants are sued in their individual and official capacities. At all times material herein, these Defendants acted under color of state law and within the scope of their employment. Plaintiffs will amend this Complaint to allege the true names, capacities, and specific conduct of each Doe Defendant when ascertained.

25. At all times material herein, all individually named Defendants and Doe Defendants acted under color of state law, in the course and scope of their employment, and within their capacity as peace officers and supervisors employed by the City of Stockton and the Stockton Police Department. All Defendants are subject to liability under 42 U.S.C. § 1983 for violations of Plaintiffs' clearly established constitutional rights. The individual Defendants are subject to liability for punitive damages based on their conduct being motivated by evil motive or intent and involving reckless or callous indifference to Plaintiffs' federally protected rights.

25(a). Plaintiffs are informed and believe, and on that basis allege, that Defendants KYLE RIBERA and RUBEN RILLON are the two officers who drove the marked patrol vehicle onto Doray Court on September 9, 2025; who exited that vehicle with their firearms drawn; who made physical contact with Rocco Robinson and removed him from the passenger seat of the parked vehicle; and who discharged their firearms at Mr. Robinson. Which of the two officers fired which rounds, which of them made the statement alleged in Paragraph 32, and which of them pointed a firearm at each individual Plaintiff cannot presently be alleged with greater specificity, because that information is recorded in materials within the exclusive possession, custody, and control of Defendants.

25(b). Plaintiffs are informed and believe, and on that basis allege, that Officers Ribera and Rillon were each equipped with and operating a body-worn camera during the encounter alleged herein, and that the resulting recordings depict the individual conduct of each officer, the pointing of firearms at each Plaintiff, and the detentions alleged herein. These recordings are in the exclusive possession, custody, and control of Defendants.

25(c). Plaintiffs are informed and believe, and on that basis allege, that following the shooting additional Stockton Police Department officers, sued herein as DOES 1 through 10, responded to and took control of Doray Court, and that one or more of those officers, rather than

or in addition to Officers Ribera and Rillon, handcuffed and detained Plaintiff E.P. for several hours, handcuffed and detained Plaintiff Luis F. Legg Jr., and struck Plaintiff Katalina Arellano with a baton. This allegation is based upon the several-hour duration of E.P.'s detention, which extended well beyond the initial encounter alleged below, and upon the containment of the scene that followed the shooting. As used in this Complaint, "Defendant officers" means Defendants Ribera and Rillon and Does 1 through 10, individually and collectively; where an act is alleged against "Defendant officers," Plaintiffs allege that the act was committed by one or more of them and that the precise attribution is presently unknown to Plaintiffs for the reasons stated in Paragraphs 24 and 25(a).

## V. FACTUAL ALLEGATIONS

A. The Incident of September 9, 2025

26. On September 9, 2025, at approximately 6:08 p.m., Plaintiffs and their family members were gathered in and around their homes on Doray Court, a small residential cul-de-sac in Stockton, California. The evening was pleasant, and families were outside enjoying the early autumn weather. Minor children were playing in the street and on the sidewalk. A barbeque was being planned.

27. Doray Court is a quiet residential area populated by families with young children. There was no criminal activity in progress on Doray Court that evening. There had been no calls for police service to that location. No emergency existed. The residents were peacefully gathered outside their homes, engaged in ordinary family activities.

28. Rocco Robinson had arrived at his cousin's residence on Doray Court earlier that evening to attend a family barbeque. Mr. Robinson and his friend had parked a black Mercedes sedan near the residence and were in the process of unloading supplies for the barbeque. The vehicle was parked at approximately a ninety-degree angle to the sidewalk, in what may have constituted a minor parking violation. The vehicle was not moving. Mr. Robinson was seated in the front passenger seat retrieving items from the vehicle. He was not the driver. He posed no threat to anyone.

29. Without warning, Defendant officers drove onto Doray Court in their marked patrol vehicle. Within approximately forty seconds, the officers had pulled up at a ninety-degree

angle to the black Mercedes, parking less than one car length away. The officers' arrival was sudden and aggressive.

30. Defendants exited their patrol vehicle with their firearms drawn. Their manner was hostile and threatening. The officers approached Mr. Robinson, who was still seated in the passenger seat of the vehicle gathering barbeque supplies.

31. The officers grabbed Mr. Robinson and violently yanked him from the vehicle. Multiple Plaintiffs, including the minor children, witnessed this violent interaction at close range from their nearby homes and yards.

32. One of the Defendant officers yelled, "I'm going to fucking shoot you, stop." Immediately thereafter, gunshots rang out. The first shot was fired approximately one minute and two seconds after the Defendant officers drove onto Doray Court.

33. Defendant officers shot Rocco Robinson sixteen times in the back, killing him in front of numerous witnesses, including Plaintiffs and the four minor children.

34. The shooting occurred directly in front of the residences where Plaintiffs and their families lived, in full view of everyone present, including young children. The violence was sudden, shocking, and traumatic.

B. Officers Pointed Loaded Firearms Directly at Plaintiffs Including Minor Children

35. During the course of the incident, Defendant officers pointed their loaded firearms directly at multiple Plaintiffs, including innocent bystanders who posed no threat whatsoever to the officers or anyone else.

36. One or more Defendant officers pointed loaded firearms directly at E.P., who was standing outside near his residence. E.P. could see the officers' fingers on the triggers of their weapons. E.P. was unarmed, was not suspected of any crime, posed no threat to anyone, and was merely present in his own residential neighborhood. The act of pointing a loaded firearm directly at this minor child was objectively unreasonable and constituted an unlawful seizure and use of excessive force.

37. Defendant officers also pointed loaded firearms directly at Plaintiffs JULINDA KIRBY, Y.P., S.P., SALISA LEGG, D.L., KATALINA ARELLANO, LUIS F. LEGG JR., JASON DRAKE BARAJAS, CELINES PETROSIAN, KAIDEN UN-SMITH, and RINA UN. Each of these Plaintiffs was then present in or immediately outside a residence on or adjacent to

Doray Court, was unarmed, was not suspected of any criminal activity, and posed no threat to the officers or to any other person. Each of these Plaintiffs personally saw one or more officers point a loaded firearm in his or her direction at close range. Plaintiffs are informed and believe, and on that basis allege, that the officer or officers who pointed a firearm at each of these Plaintiffs, and the moment at which each did so, are depicted in the body-worn camera recordings of the encounter, which are in the exclusive possession, custody, and control of Defendants. Plaintiffs will amend this allegation to identify the individual officer as to each Plaintiff when that information is ascertained.

38. The officers provided no warning before pointing their firearms at Plaintiffs. The officers had no reasonable suspicion or probable cause to believe that any of the Plaintiffs had committed, were committing, or were about to commit any crime. The officers had no reasonable basis to believe that any Plaintiff posed a threat of death or serious bodily injury to the officers or to any other person.

39. The act of drawing and pointing loaded firearms at innocent bystanders, including young children, in a residential neighborhood where no exigent circumstances existed and no individuals posed any threat, violated clearly established Fourth Amendment rights to be free from unreasonable seizures and excessive force.

C. Unlawful Detention and Handcuffing of Minor E.P.

40. After shooting Rocco Robinson, Defendant officers unlawfully seized and detained E.P. without reasonable suspicion or probable cause.

41. One or more Defendant officers handcuffed E.P., a minor child, and held him in custody for several hours. During this extended detention, E.P. was not provided with water, food, or access to a bathroom. E.P. was not permitted to speak with his mother or any other family member. E.P. was not given any Miranda warnings. E.P. was not told why he was being detained or when he would be released.

42. E.P. had committed no crime and was not suspected of any criminal activity. E.P. had done nothing to provide the officers with reasonable suspicion or probable cause to justify his seizure and detention. E.P. posed no threat to the officers or to public safety. E.P. was not a flight risk. There was no legal justification for his detention.

43. The Defendant officers' seizure and detention of E.P. was objectively unreasonable and violated his clearly established Fourth Amendment rights to be free from unreasonable seizures.

D. Unlawful Detention of Luis F. Legg Jr.

44. One or more Defendant officers also unlawfully seized and detained Plaintiff Luis F. Legg Jr. during the incident. One or more officers handcuffed Mr. Legg without reasonable suspicion or probable cause to believe he had committed any crime. The identity of the officer who applied handcuffs to Mr. Legg is presently unknown to Plaintiffs and is recorded in materials within the exclusive possession, custody, and control of Defendants.

45. Mr. Legg was in his own residential neighborhood and had done nothing to justify his detention. He posed no threat to the officers or anyone else. He was not suspected of any criminal activity. There was no legal justification for his seizure and detention.

46. The Defendant officers' seizure and detention of Mr. Legg was objectively unreasonable and violated his clearly established Fourth Amendment rights to be free from unreasonable seizures.

E. Battery Against Katalina Arellano

47. When Plaintiff Katalina Arellano inquired about the welfare of her family members, including her brother, following the shooting, one or more Defendant officers responded by shoving her with a baton. The identity of the officer who struck Ms. Arellano is presently unknown to Plaintiffs and is recorded in materials within the exclusive possession, custody, and control of Defendants.

48. This use of force against Ms. Arellano was objectively unreasonable. Ms. Arellano posed no threat to the officer or anyone else. She had committed no crime. She was simply exercising her right to inquire about the welfare of her family members following a traumatic incident in her immediate vicinity.

49. The officer's act of shoving Ms. Arellano with a baton constituted excessive force in violation of the Fourth Amendment, as well as battery under California law. This use of force was intentional, unprovoked, and without legal justification.

F. Trauma to Minor Children and All Plaintiffs

50. All Plaintiffs, including the four minor children, witnessed the shooting death of Rocco Robinson at close range from their homes and yards. The shooting occurred in their immediate residential neighborhood, directly in front of them, without warning.

51. The minor children were subjected to the traumatic experience of witnessing officers shoot another human being to death in their immediate vicinity. The violence was sudden, shocking, and terrifying.

52. The officers knew or should have known that multiple families and children were present in the immediate area when they initiated their aggressive and violent actions. The officers failed to take any measures to protect the minor children from exposure to this traumatic violence. Indeed, the officers created the dangerous and traumatic situation by their own unreasonable conduct.

53. As a direct and proximate result of Defendants' conduct, all Plaintiffs have suffered and continue to suffer severe emotional distress, post-traumatic stress disorder, nightmares, anxiety, depression, fear of police, hypervigilance, and other psychological injuries. The minor children have been particularly severely affected, experiencing lasting psychological trauma that will require ongoing mental health treatment.

54. Plaintiffs JULINDA KIRBY and SALISA LEGG, as the mothers of the minor children, have suffered violations of their Fourteenth Amendment liberty interest in the companionship, care, and society of their children, as their children have been traumatized by Defendants' conduct.

G. Lack of Justification for Use of Force

55. At the time Defendant officers pointed firearms at Plaintiffs, including the minor children, there was no reasonable basis to believe that any Plaintiff posed a threat of death or serious bodily injury to the officers or anyone else. The Plaintiffs were innocent bystanders engaged in lawful activities in their own residential neighborhood.

56. At the time Defendant officers shot Rocco Robinson, he did not pose an immediate threat of death or serious bodily injury to the officers or anyone else. Mr. Robinson

was shot sixteen times in the back. The number of shots fired was objectively unreasonable and excessive. The shooting was unnecessary and unjustified.

57. Reasonable alternatives to the use of deadly force were available and feasible. The officers created the dangerous situation by their own unreasonable tactics and failure to de-escalate. The officers rushed into the situation with guns drawn without assessing the circumstances or considering alternatives.

H. Pattern and Practice of Excessive Force by Stockton Police Department

58. The conduct of Defendant officers on September 9, 2025, was not an isolated incident but rather reflects a pattern and practice of excessive and unreasonable use of force by the Stockton Police Department, particularly the unreasonable and excessive use of firearms and deadly force.

59. The Stockton Police Department has been involved in numerous prior incidents involving excessive use of force, unjustified shootings, and violations of constitutional rights. Multiple lawsuits have been filed and settled involving claims of excessive force by Stockton Police officers. Despite this history, Defendant City of Stockton and Defendant McFadden have failed to implement adequate policies, training, supervision, and discipline to prevent such violations.

60. The following are examples of prior incidents demonstrating the Stockton Police Department's pattern and practice of excessive force:

a. In February 2022, Stockton Police Officer Kyle Ribera shot and killed Tracy Gaeta, an African-American woman, firing thirty-three shots into her vehicle. A civil rights lawsuit is currently pending in this Court. (Gaeta v. City of Stockton, Case No. 2:23-cv-00077-TLN-CSK).

b. In December 2021, Stockton Police Officer involved in a shooting where six officers confronted an armed man in the parking lot of the Stockton Police Station. Five officers fired on the man, killing him.

c. In July 2020, three Stockton Police Officers shot and killed Antwaune Burrise, Sr., a Black man, firing ten times while he was sitting in a car. A civil rights lawsuit was filed. (D.B. v. City of Stockton, Case No. 2:21-cv-02154-DJC-SCR).

d. In August 2016, Stockton Police Officer David Wells shot and killed Colby Friday, an unarmed African-American man. Officer Wells failed to activate his body camera. The case settled for $3.25 million. Officer Wells subsequently shot and killed another person, Antwaune Burrise, Sr., in 2020. (L.F. v. City of Stockton, Case No. 2:17-cv-01648-KJM-DB).

e. In February 2014, Stockton Police Officer Robert Johnson III shot and killed Donald Ray Haynes, an African-American man, during a traffic stop. Mr. Haynes was unarmed. The case settled for $90,000. Officer Johnson had previously been found by a jury to have used excessive force against an African-American in another case that resulted in a $710,000 verdict. Despite these incidents, Officer Johnson was not disciplined and remains employed by the Stockton Police Department. (Haynes v. Johnson, Case No. 2:15-cv-00565-WBS-DB; Green v. City of Stockton, Case No. STK-CV-UPI-2011-0014340).

f. In July 2014, Stockton Police officers fired over 600 bullets into a vehicle during a pursuit, killing hostage Misty Holt-Singh. The case settled for $5.75 million. (Singh v. City of Stockton, Case No. STK-CV-UNPI-2015-0007587).

g. Multiple other incidents involving excessive force, unlawful use of tasers, K-9 attacks, and other constitutional violations by Stockton Police officers have resulted in civil rights lawsuits and substantial settlements.

61. Despite this extensive history of excessive force incidents, Defendant City of Stockton and Defendant McFadden have failed to adequately discipline officers, implement necessary policy reforms, provide adequate training, or take other measures to prevent future violations. Officers involved in excessive force incidents are routinely found to have acted "within policy" even when their conduct clearly violated constitutional standards. Officers are rarely disciplined, retrained, or terminated, even after multiple incidents of excessive force.

62. The Stockton Police Department has an unofficial policy and practice of finding nearly all officer-involved shootings to be "within policy" and of not disciplining officers involved in shootings. This policy effectively ratifies and encourages the use of excessive and unreasonable force.

63. The Stockton Police Department has failed to train its officers adequately on the use of force, de-escalation techniques, tactics, and the constitutional requirements for the use of firearms and deadly force. The Department's training is deficient in numerous respects, including failing to train officers to avoid unnecessarily creating dangerous situations, to use alternatives to deadly force, to protect bystanders including children, and to avoid excessive numbers of shots.

64. The Stockton Police Department has failed to categorize the drawing and pointing of a firearm as a use of force requiring documentation and review. This policy failure encourages officers to draw firearms unnecessarily and point them at individuals, including innocent bystanders and children, without justification, as occurred in this case.

65. The Stockton Police Department's inadequate policies, training, supervision, and discipline regarding use of force were the moving force behind the constitutional violations suffered by Plaintiffs in this case.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Excessive Force in Violation of the Fourth Amendment**
**(42 U.S.C. § 1983)**
**(Against Defendants Ribera, Rillon, and Does 1-10)**

66. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 65 as though fully set forth herein.

67. This claim is brought by all Plaintiffs against Defendants RIBERA, RILLON, and DOES 1 through 10.

68. The Fourth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, protects individuals from unreasonable seizures and prohibits the use of excessive force during seizures.

69. The Defendant officers used excessive force against Plaintiffs when they:

a. Drew and pointed loaded firearms directly at Plaintiffs, including minor children, without reasonable suspicion or probable cause to believe that any Plaintiff had committed a crime or posed a threat to anyone;

b. Pointed loaded firearms directly at minor E.P., placing their fingers on the triggers while he stood unarmed and non-threatening in his own residential neighborhood;

c. Shoved Plaintiff Katalina Arellano with a baton when she inquired about her family members' welfare, despite the fact that she posed no threat and had committed no crime;

d. Created a dangerous and traumatic situation in a residential neighborhood populated with families and children by rushing in with guns drawn and shooting a person in front of multiple witnesses including young children, without regard for the safety of innocent bystanders;

e. Failed to use less intrusive means and alternative de-escalation tactics that were readily available; and

f. Shot Rocco Robinson sixteen times in the back, killing him in front of Plaintiffs including minor children, when he did not pose an immediate threat of death or serious bodily injury to anyone.

70. Under the Fourth Amendment and clearly established law, a seizure occurs when a reasonable person would not feel free to leave or terminate the encounter with police. The pointing of a loaded firearm at a person by a law enforcement officer constitutes a seizure under the Fourth Amendment.

71. The Defendant officers' act of drawing and pointing loaded firearms at Plaintiffs, including at minor E.P. and other minor children, constituted a seizure under the Fourth Amendment. No reasonable person, and certainly no reasonable child, would feel free to leave or terminate an encounter when a police officer is pointing a loaded firearm directly at them with their finger on or near the trigger.

72. The force used by Defendants---drawing and pointing loaded firearms at innocent bystanders including children---was objectively unreasonable under the circumstances. The Plaintiffs posed no threat to the officers or anyone else. They were not suspected of any criminal activity. They were engaged in lawful conduct in their own residential neighborhood. No reasonable officer could have believed that pointing loaded firearms at these individuals was necessary or appropriate.

73. Graham v. Connor, 490 U.S. 386 (1989), and clearly established Ninth Circuit law, state that the reasonableness of force must be judged from the perspective of a reasonable officer on the scene. Courts must consider factors including the severity of the crime, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect is actively resisting or attempting to evade arrest. Applying these factors, the force used against Plaintiffs was objectively unreasonable:

a. No crime was in progress. At most, there was a minor parking violation. Plaintiffs themselves were not suspected of any crime whatsoever.

b. Plaintiffs posed no immediate threat to the safety of the officers or anyone else. They were unarmed civilians, including young children, in their own residential neighborhood.

c. Plaintiffs were not resisting arrest or attempting to evade arrest. They were bystanders who had not been ordered to do anything and had no reason to believe they were being detained or arrested.

d. The use of drawn firearms against innocent bystanders, particularly children, in a non-threatening, non-emergency situation was grossly disproportionate to any legitimate law enforcement objective.

74. It was clearly established at the time of these events that pointing a loaded firearm at a person who poses no threat and is not suspected of a serious crime constitutes excessive force in violation of the Fourth Amendment.

75. The use of excessive force against Plaintiffs was intentional and motivated by reckless disregard for Plaintiffs' constitutional rights. No reasonable officer could have believed that pointing guns at innocent bystanders including children in this situation was lawful.

76. Each Defendant officer who did not personally apply the force alleged in this Claim was present at the scene, observed the force being applied by his fellow officers, had a realistic opportunity to intervene to prevent it, and failed to do so. Plaintiffs are informed and believe, and on that basis allege, that each Defendant officer was an integral participant in the uses of force alleged herein, in that each was present, was aware of the conduct of the others, and

provided armed support and cover for that conduct. The precise role of each officer is presently unknown to Plaintiffs for the reasons stated in Paragraphs 24 and 25(a).

77. It was clearly established before September 9, 2025 that an officer may not point a loaded firearm at a person who is not suspected of a crime and who poses no threat, may not handcuff and detain a person without reasonable suspicion or probable cause, and may not strike a non-resisting person with a baton. No reasonable officer in the position of Defendants Ribera, Rillon, or Does 1 through 10 could have believed that the conduct alleged herein was lawful.

78. As a direct and proximate result of Defendants' use of excessive force, Plaintiffs have suffered and continue to suffer severe physical, emotional, and psychological injuries, including post-traumatic stress disorder, anxiety, depression, fear of police, nightmares, hypervigilance, and other damages. The minor children have suffered particularly severe trauma that will require ongoing treatment.

79. Plaintiffs are entitled to compensatory damages against Defendants Ribera, Rillon, and Does 1 through 10 in an amount to be proven at trial. Plaintiffs are also entitled to punitive damages against these Defendants in an amount sufficient to punish them and deter future misconduct.

**SECOND CLAIM FOR RELIEF**
**Unlawful Seizure in Violation of the Fourth Amendment**
**(42 U.S.C. § 1983)**
**(Against Defendants Ribera, Rillon, and Does 1-10)**

80. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 79 as though fully set forth herein.

81. This claim is brought by all Plaintiffs against Defendants RIBERA, RILLON, and DOES 1 through 10.

82. The Fourth Amendment protects individuals from unreasonable seizures of their persons. A seizure occurs when, in view of all the circumstances, a reasonable person would not feel free to leave or terminate the encounter with police.

83. One or more Defendant officers unlawfully seized Plaintiff E.P. by pointing a loaded firearm directly at him, and thereafter by handcuffing him and detaining him in custody for several hours, without reasonable suspicion or probable cause. Plaintiffs are informed and

believe, and on that basis allege, that the officer who applied handcuffs to E.P., the officer or officers who thereafter maintained custody of him, and the supervisor who authorized or permitted his continued detention are identified in the scene logs, detention records, incident reports, and body-worn camera recordings within the exclusive possession, custody, and control of Defendants. Plaintiffs will amend this allegation to name those officers when their identities are ascertained.

84. E.P. was in his own residential neighborhood engaged in lawful activities. He had committed no crime. He was not suspected of any criminal activity. He posed no threat to the officers or anyone else. He was not a flight risk. There was no emergency or exigent circumstance justifying his seizure.

85. The pointing of loaded firearms at E.P. by itself constituted a seizure. No reasonable person, particularly no reasonable child, would feel free to leave or walk away when police officers are pointing loaded guns at them with their fingers on or near the triggers.

86. The handcuffing and detention of E.P. for several hours without access to water, food, bathroom facilities, or contact with his mother constituted a continued unlawful seizure.

87. According to Terry v. Ohio, 392 U.S. 1 (1968), and its progeny, a seizure of a person must be supported by reasonable suspicion of criminal activity at a minimum. A more intrusive or prolonged detention requires probable cause. The Defendant officers had neither reasonable suspicion nor probable cause to seize E.P.

88. The seizure of E.P. was objectively unreasonable and violated clearly established Fourth Amendment law. No reasonable officer could have believed that seizing this child in these circumstances was lawful.

89. One or more Defendant officers also unlawfully seized Plaintiff Luis F. Legg Jr. by handcuffing and detaining him without reasonable suspicion or probable cause to believe he had committed any offense. Mr. Legg was in his own residential neighborhood, had committed no crime, was not suspected of any crime, and posed no threat to any person. He was released without citation or arrest. The identity of the officer who handcuffed him is presently unknown to Plaintiffs and is recorded in materials within the exclusive possession, custody, and control of Defendants.

90. One or more Defendant officers seized Plaintiff Katalina Arellano when they pointed a loaded firearm at her and when an officer struck her with a baton, thereby restraining

her movement and preventing her from approaching or continuing to inquire about the welfare of her family members. Ms. Arellano had committed no crime, was not suspected of any criminal activity, and posed no threat to any officer or other person. The seizure was objectively unreasonable and violated clearly established law. The identity of the officer who struck her is presently unknown to Plaintiffs and is recorded in materials within the exclusive possession, custody, and control of Defendants.

91. Each Defendant officer who did not personally effect a seizure alleged in this Claim was present, observed the seizure, had a realistic opportunity to intervene to prevent it, and failed to do so, and was an integral participant in that seizure. The precise role of each officer is presently unknown to Plaintiffs for the reasons stated in Paragraphs 24 and 25(a).

92. As a direct and proximate result of these unlawful seizures, Plaintiffs have suffered severe emotional and psychological injuries, including post-traumatic stress disorder, anxiety, fear of police, and other damages.

93. Plaintiffs are entitled to compensatory damages and punitive damages against Defendants Ribera, Rillon, and Does 1 through 10.

**THIRD CLAIM FOR RELIEF**
**Substantive Due Process -- Failure to Protect**
**(42 U.S.C. § 1983)**
**(Against Defendants Ribera, Rillon, and Does 1-10)**

94. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 93 as though fully set forth herein.

95. This claim is brought by the minor Plaintiffs E.P., Y.P., S.P., and D.L. against Defendants RIBERA, RILLON, and DOES 1 through 10.

96. The Fourteenth Amendment's Due Process Clause protects individuals from governmental conduct that "shocks the conscience." The Due Process Clause imposes on state actors a duty to protect individuals from harm when the state has created the danger that caused the harm or when the state has a special relationship with the individual.

97. Defendant officers created the dangerous situation on Doray Court by rushing into a peaceful residential neighborhood with guns drawn, pointing firearms at residents including children, and shooting and killing an individual in front of multiple witnesses including young

children. The danger and trauma to which the minor children were exposed was entirely created by Defendants' conduct.

98. Defendant officers knew or should have known that multiple families and young children were present in the immediate area. Despite this knowledge, the officers proceeded with aggressive and violent tactics that subjected the children to severe psychological trauma.

99. The officers' conduct in shooting and killing an individual in front of young children, pointing loaded firearms at children, and creating a violent and terrifying scene in a residential neighborhood, with conscious disregard for the psychological well-being and safety of the children present, shocks the conscience.

100. Under clearly established law, governmental conduct that is arbitrary and conscience-shocking violates substantive due process. The deliberate decision to engage in violence in front of young children, without regard for their psychological well-being and without taking any measures to protect them from witnessing such trauma, constitutes conscience-shocking behavior that violates the minor Plaintiffs' substantive due process rights.

101. Defendant officers acted with deliberate indifference to the presence and to the psychological well-being of the minor Plaintiffs, each of whom was known to the officers, or was obviously apparent to them, to be a child present in the immediate area at the time the officers drew, pointed, and discharged their firearms.

102. As a direct and proximate result of Defendants' conduct, the minor Plaintiffs have suffered severe psychological trauma, including post-traumatic stress disorder, nightmares, anxiety, depression, and other injuries that will require ongoing treatment.

103. The minor Plaintiffs are entitled to compensatory damages and punitive damages against Defendants Ribera, Rillon, and Does 1 through 10.

## FOURTH CLAIM FOR RELIEF
**Interference with Familial Relationship**
**(42 U.S.C. § 1983)**
**(Against Defendants Ribera, Rillon, and Does 1-10)**

104. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 103 as though fully set forth herein.

105. This claim is brought by Plaintiffs Julinda Kirby and Salisa Legg against Defendants RIBERA, RILLON, and DOES 1 through 10.

106. The Fourteenth Amendment protects the fundamental liberty interest of parents in the care, custody, companionship, and society of their children. This right includes the right to be free from unwarranted governmental interference with the parent-child relationship.

107. Defendant officers interfered with Plaintiffs Kirby's and Legg's fundamental liberty interest in their relationships with their children by:

a. Subjecting their minor children to severe psychological trauma by shooting and killing an individual in front of them;

b. Pointing loaded firearms directly at their children, including at Ms. Kirby's son E.P.;

c. Unlawfully seizing, handcuffing, and detaining E.P. for several hours without permitting contact with his mother; and

d. Creating a violent and terrifying situation that has caused lasting psychological harm to their children, fundamentally altering the parent-child relationships and forcing the parents to cope with their children's trauma.

108. The officers' conduct was undertaken with deliberate indifference to the parent-child relationships and to the obvious harm that would result to these relationships from subjecting young children to such traumatic experiences.

109. It was clearly established at the time of these events that parents have a constitutional right to familial integrity and that governmental actors may not interfere with parent-child relationships without compelling justification.

110. As a direct and proximate result of Defendants' conduct, Plaintiffs Kirby and Legg have suffered the loss of the normal parent-child relationships they previously enjoyed with their children. Their children have been traumatized and fundamentally changed by what they experienced, and Plaintiffs must now cope with their children's ongoing trauma, fear, and psychological injuries.

111. Plaintiffs Kirby and Legg are entitled to compensatory damages and punitive damages against Defendants Ribera, Rillon, and Does 1 through 10.

**FIFTH CLAIM FOR RELIEF**
**Monell Liability -- Custom, Practice, or Policy**
**(42 U.S.C. § 1983)**
**(Against Defendant City of Stockton)**

112. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 111 as though fully set forth herein.

113. This claim is brought by all Plaintiffs against Defendant City of Stockton.

114. Under Monell v. Department of Social Services, 436 U.S. 658 (1978), a municipality may be held liable under 42 U.S.C. § 1983 when a constitutional violation results from an official policy, widespread practice or custom, or decision by an official with final policymaking authority.

115. At all relevant times, Defendant City of Stockton, through Defendant McFadden and other policymakers, maintained the following unconstitutional policies, practices, and customs that were the moving force behind the constitutional violations suffered by Plaintiffs:

a. Policy of Not Categorizing Firearm Display as Use of Force: The City maintained an express policy of not categorizing the drawing, display, or pointing of firearms as a "use of force" requiring documentation and review unless the firearm is actually discharged. This policy encourages officers to draw and point firearms unnecessarily and without proper justification because such conduct is not subject to the same scrutiny and review as other uses of force. This policy was a direct cause of officers pointing guns at innocent bystanders including children in this case.

b. Inadequate Use of Force Policies: The City's use of force policies fail to provide adequate guidance on when firearms may be drawn and pointed at individuals. The policies fail to emphasize the constitutional requirement that force, including displaying firearms, must be objectively reasonable under the totality of circumstances. The policies fail to require that officers consider whether individuals pose an actual threat before drawing firearms.

c. Failure to Train on Drawing and Pointing Firearms: The City fails to provide adequate training to officers on the constitutional limits regarding when firearms may be drawn and pointed at individuals. Officers are not trained that pointing a firearm constitutes a significant use of force that must be justified by the circumstances. Officers are not trained on the particular

harm caused by pointing firearms at children or the need to avoid such conduct absent extraordinary circumstances.

d. Failure to Train on Protection of Bystanders: The City fails to train officers adequately on their duty to protect innocent bystanders, particularly children, from foreseeable harm during law enforcement operations. Officers are not trained to consider the presence of children and families before engaging in aggressive or violent tactics.

e. Failure to Train on De-escalation: The City provides inadequate training on de-escalation techniques and on the constitutional requirement to use the minimum force necessary. Officers are not adequately trained to avoid creating dangerous situations or to employ tactics that minimize the need for force.

f. Failure to Train on Constitutional Requirements for Seizures: The City provides inadequate training on the Fourth Amendment's requirements for seizing individuals, including the requirement of reasonable suspicion or probable cause. Officers are not adequately trained on the constitutional restrictions on detaining bystanders or witnesses who are not suspected of criminal activity.

g. Pattern and Practice of Excessive Force: As detailed in paragraphs 58 through 65, the Stockton Police Department has engaged in a pattern and practice of excessive force, particularly involving the unnecessary use of firearms and deadly force. The City has been aware of this pattern through numerous lawsuits, substantial settlements, and repeated incidents, yet has failed to take adequate corrective action.

h. Inadequate Supervision and Discipline: The City maintains a practice of inadequate supervision and discipline of officers who use excessive force or violate constitutional rights. Officers involved in shootings and other excessive force incidents are routinely found to have acted "within policy" even when their conduct clearly violated constitutional standards. Officers are rarely disciplined, retrained, or terminated, even after multiple incidents of misconduct. This practice ratifies and encourages future misconduct.

i. Delayed Review of Officer Misconduct: The City maintains a practice of delaying review of officer-involved shooting incidents and other serious uses of force for months or years. This practice prevents timely accountability and allows officers to continue engaging in problematic conduct without corrective action.

j. Tolerance of "Code of Silence": The City tolerates and fails to address a "code of silence" among officers whereby officers do not report other officers' misconduct and protect each other from accountability.

116. Each of these policies, practices, and customs reflected deliberate indifference by Defendant City of Stockton to the constitutional rights of persons with whom its police officers interact. The City was aware, through prior incidents, lawsuits, and complaints, that its policies and practices were inadequate and were leading to constitutional violations. Despite this awareness, the City failed to take adequate corrective action.

117. These policies, practices, and customs were the moving force behind and a direct cause of the constitutional violations suffered by Plaintiffs in this case. The officers' conduct in pointing firearms at innocent bystanders including children, unlawfully seizing individuals, using excessive force, and subjecting children to psychological trauma directly resulted from these deficient policies and the lack of adequate training and supervision.

118. As a direct and proximate result of these unconstitutional policies, practices, and customs maintained by Defendant City of Stockton, Plaintiffs have suffered the injuries and damages alleged herein.

119. Plaintiffs are entitled to compensatory damages against Defendant City of Stockton.

**SIXTH CLAIM FOR RELIEF**
**Monell Liability -- Failure to Train**
**(42 U.S.C. § 1983)**
**(Against Defendant City of Stockton)**

120. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 119 as though fully set forth herein.

121. This claim is brought by all Plaintiffs against Defendant City of Stockton.

122. Under City of Canton v. Harris, 489 U.S. 378 (1989), a municipality may be held liable under § 1983 for failure to train its employees when the failure to train amounts to deliberate indifference to the constitutional rights of persons with whom the employees interact.

123. Defendant City of Stockton's training of its officers was constitutionally inadequate in the following specific respects, each of which bears directly upon the conduct that injured Plaintiffs:

a. Drawing and Pointing Firearms. The City does not classify the drawing, display, or pointing of a firearm at a person as a reportable use of force. As a consequence, such conduct is not documented, reviewed, or evaluated; officers who engage in it repeatedly are not identified; and officers are not trained that pointing a firearm at a person is both a seizure and a use of force that must be independently justified by the circumstances. Plaintiffs are informed and believe, and on that basis allege, that no component of the City's use-of-force training addresses when an officer may point a firearm at a person who is not a suspect, and that an officer may point a loaded firearm at an uninvolved bystander, including a child, without generating any report, review, or corrective action of any kind.

b. Tactical Approach and De-escalation. The City does not adequately train officers to avoid tactics that unnecessarily create the conditions requiring a use of deadly force, including approaching a parked, stationary vehicle at close quarters with firearms drawn in the absence of any reported crime, call for service, emergency, or articulable threat.

c. Protection of Bystanders. The City does not adequately train officers to assess and account for the presence of uninvolved residents, including children, before employing firearms or other forceful tactics in a residential setting.

d. Seizures of Non-Suspects and Minors. The City does not adequately train officers on the reasonable-suspicion and probable-cause requirements governing the detention of witnesses and bystanders, or on the limits governing the prolonged handcuffed detention of a minor, including the obligation to permit parental contact and to provide food, water, and access to sanitary facilities.

124. The City had actual and constructive notice that this training was inadequate. The incidents alleged in Paragraph 60 are violations of the same character by the same department: repeated officer-involved shootings in which Stockton officers fired grossly excessive numbers of rounds at persons in or beside vehicles, including thirty-three rounds fired by Defendant Ribera into Tracy Gaeta's vehicle in February 2022, ten rounds fired into Antwaune Burrise Sr.'s vehicle in July 2020, and more than six hundred rounds fired into a vehicle in July 2014, killing the hostage Misty Holt-Singh. Each of these incidents generated civil rights litigation against the City, and several resulted in substantial settlements paid by the City, including $3.25 million in the Colby Friday matter and $5.75 million in the Holt-Singh matter. The City was therefore on notice well before September 9, 2025 that its officers were resorting to firearms in circumstances, and in volumes of fire, that its training did not constrain.

125. Notwithstanding that notice, the City took no corrective action as to Defendant Ribera. Plaintiffs are informed and believe, and on that basis allege, that following the February 2022 shooting of Tracy Gaeta, in which Officer Ribera fired thirty-three rounds into an occupied vehicle, the City determined that Officer Ribera's conduct was "within policy"; that Officer Ribera received no retraining on the use of deadly force, on de-escalation, or on volume of fire; that he was neither disciplined nor reassigned; and that he remained assigned to patrol duties continuously from February 2022 until September 9, 2025, when he fired upon Rocco Robinson. The facts establishing what review, training, and corrective action, if any, followed the Gaeta shooting are within the exclusive possession, custody, and control of Defendants and are recorded in the City's personnel, training, and officer-involved-shooting review files. Plaintiffs will amend this allegation as necessary after discovery.

126. Independently of the pattern alleged above, the need for the training identified in Paragraph 123 was obvious. It is a highly predictable consequence of arming officers and deploying them into residential neighborhoods without training on the pointing of firearms at non-suspects, on tactical approach and de-escalation, and on the detention of bystanders and minors, that officers will point loaded firearms at uninvolved residents and children and will detain them without cause. The City's failure to provide that training was a conscious choice among available alternatives and reflected deliberate indifference to the rights of the persons its officers would predictably encounter.

127. The City's failure to train was the moving force behind and an actual and proximate cause of the violations of Plaintiffs' rights. Had Stockton officers been trained that pointing a firearm at a person is a reportable use of force requiring justification, that such conduct is documented and reviewed, and that officers who engage in it without justification face corrective action, Defendant officers would not have pointed loaded firearms at uninvolved residents and children on Doray Court. Had Defendant officers been trained to assess a stationary vehicle and a populated residential setting before approaching with firearms drawn, they would not have created, within approximately sixty-two seconds of their arrival, the confrontation that culminated in the shooting of Rocco Robinson. Had they been trained on the constitutional limits governing the detention of non-suspects and minors, they would not have handcuffed a child and held him for several hours without cause, without parental contact, and without food, water, or access to a bathroom. As a direct and proximate result of the City's failure to train, Plaintiffs have suffered the injuries and damages alleged herein.

128. Plaintiffs are entitled to compensatory damages against Defendant City of Stockton.

**SEVENTH CLAIM FOR RELIEF**
**Monell Liability -- Ratification**
**(42 U.S.C. § 1983)**
**(Against Defendant City of Stockton and Defendant McFadden in His Official Capacity)**

129. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 128 as though fully set forth herein.

130. This claim is brought by all Plaintiffs against Defendant City of Stockton and Defendant McFadden in his official capacity.

131. Under clearly established law, a municipality may be held liable under § 1983 when an official with final policymaking authority ratifies or approves unconstitutional conduct by subordinate employees.

132. Defendant McFadden is the Chief of the Stockton Police Department and has final policymaking authority with respect to reviewing, approving, and determining whether officer conduct complies with Department policy and constitutional standards.

133. Upon information and belief, Defendant McFadden and other officials with final policymaking authority have reviewed or will review the conduct of the Defendant officers on

September 9, 2025, including the pointing of firearms at innocent bystanders and children, the shooting and killing of Rocco Robinson in front of witnesses including children, the unlawful detention of E.P., and the other conduct alleged herein.

134. Upon information and belief, Defendant McFadden and other policymakers have determined or will determine that the officers' conduct was "within policy" and consistent with Department standards, despite the fact that the conduct clearly violated constitutional requirements.

135. By finding or determining that such conduct is "within policy," Defendant McFadden and other policymakers ratify and approve the unconstitutional conduct, thereby making it the official policy of the City of Stockton that such conduct is acceptable.

136. This ratification reflects deliberate indifference to the constitutional rights violated by the officers' conduct. The decision to approve conduct that clearly violates the Fourth and Fourteenth Amendments demonstrates a deliberate choice to endorse constitutional violations.

137. Upon information and belief, Defendant McFadden and other policymakers have not disciplined, retrained, or taken any corrective action with respect to the officers involved in this incident. The failure to take any corrective action in response to clear constitutional violations constitutes ratification of the conduct.

138. The City has a pattern and practice of ratifying unconstitutional conduct by its officers. As detailed above, the City routinely finds officer conduct to be "within policy" even when that conduct clearly violates constitutional standards, and the City rarely disciplines officers even after egregious violations resulting in substantial lawsuit settlements.

139. This ratification of unconstitutional conduct was a moving force behind and a direct cause of the violations in this case, as it encourages officers to engage in similar conduct in the future without fear of discipline or accountability.

140. Plaintiffs are entitled to compensatory damages against Defendant City of Stockton and Defendant McFadden in his official capacity.

**EIGHTH CLAIM FOR RELIEF**
**Violation of Bane Civil Rights Act**
**(California Civil Code § 52.1)**
**(Against All Defendants)**

141. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 140 as though fully set forth herein.

142. This claim is brought by all Plaintiffs against Defendants RIBERA, RILLON, and DOES 1 through 10, and against Defendant CITY OF STOCKTON pursuant to California Government Code section 815.2.

143. California Civil Code section 52.1, known as the Tom Bane Civil Rights Act, provides a private right of action against any person who interferes by threats, intimidation, or coercion with an individual's exercise or enjoyment of rights secured by federal or state law.

144. The Bane Act protects the rights secured by the United States Constitution and California Constitution, including the rights protected by the Fourth and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the California Constitution.

145. Defendant officers interfered, and attempted to interfere, by threats, intimidation, and coercion with the exercise and enjoyment by each of the following Plaintiffs of rights secured by the Constitution and laws of the United States and of the State of California, as follows:

a. As to Plaintiff E.P.: one or more Defendant officers pointed a loaded firearm directly at E.P., a child, at close range and with a finger on or near the trigger; thereafter handcuffed him and held him in custody for several hours without food, water, access to a bathroom, or contact with his mother; and refused to tell him why he was being held or when he would be released. Each of these acts was itself a threat, an act of intimidation, and an act of coercion, undertaken with the specific intent to deprive E.P. of his rights to be free from unreasonable seizure and from excessive force, or with reckless disregard for those rights.

b. As to Plaintiff Luis F. Legg Jr.: one or more Defendant officers pointed a loaded firearm at Mr. Legg and handcuffed and detained him without reasonable suspicion or probable cause and by the display and threat of force, with the specific intent to deprive him of his right to be free from unreasonable seizure, or with reckless disregard for that right.

c. As to Plaintiff Katalina Arellano: one or more Defendant officers pointed a loaded firearm at Ms. Arellano and struck her with a baton in direct response to her verbal inquiry about the welfare of her family members, using physical force to silence her and to drive her back, with the specific intent to deprive her of her rights to be free from unreasonable seizure and from excessive force, or with reckless disregard for those rights.

d. As to Plaintiffs JULINDA KIRBY, Y.P., S.P., SALISA LEGG, D.L., JASON DRAKE BARAJAS, CELINES PETROSIAN, KAIDEN UN-SMITH, and RINA UN: one or more Defendant officers pointed a loaded firearm directly at each of these Plaintiffs at close range while each stood unarmed and non-threatening in or immediately outside a residence, thereby threatening the immediate use of deadly force to compel submission, with reckless disregard for each Plaintiff's rights to be free from unreasonable seizure and from excessive force.

e. As to all Plaintiffs: one or more Defendant officers yelled "I'm going to fucking shoot you" and then discharged their firearms sixteen times in the immediate presence of Plaintiffs, including four minor children, thereby demonstrating to each Plaintiff then held at gunpoint that the threat of deadly force directed at that Plaintiff was immediate and real.

146. These acts of threats, intimidation, and coercion interfered with Plaintiffs' rights to be free from unreasonable searches and seizures, to be free from excessive force, to be free from arbitrary detention, to bodily integrity, and to due process of law, all of which are secured by the United States Constitution and California Constitution.

147. The Defendant officers acted intentionally and with reckless disregard for Plaintiffs' constitutional rights.

148. Under California Government Code section 815.2, Defendant City of Stockton is vicariously liable for the acts of its employees committed within the scope of their employment.

149. As a direct and proximate result of Defendants' violations of the Bane Act, Plaintiffs have suffered the damages alleged herein.

150. Under Civil Code section 52.1, Plaintiffs are entitled to actual damages, a civil penalty of $25,000 per violation, and reasonable attorneys' fees and costs. Plaintiffs are also entitled to punitive damages against the individual Defendants.

**NINTH CLAIM FOR RELIEF**
**Battery**
**(Against All Defendants)**

151. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 150 as though fully set forth herein.

152. This claim is brought by Plaintiffs E.P., Katalina Arellano, and Luis F. Legg Jr. against all Defendants.

153. Battery is the intentional and unlawful touching of another person in a harmful or offensive manner.

154. Defendant officers committed battery against Plaintiff E.P. when they grabbed him, handcuffed him, and restrained him without legal justification.

155. Defendant officers committed battery against Plaintiff Katalina Arellano when they intentionally struck her with a baton without legal justification.

156. Defendant officers committed battery against Plaintiff Luis F. Legg Jr. when they grabbed him and handcuffed him without legal justification.

157. These contacts were intentional, harmful, offensive, and without consent or legal privilege.

158. Under California Government Code section 820, public employees are liable for injuries caused by their acts or omissions to the same extent as private persons. Under Government Code section 815.2, Defendant City of Stockton is vicariously liable for the torts of its employees committed within the scope of their employment.

159. As a direct and proximate result of these batteries, Plaintiffs E.P., Katalina Arellano, and Luis F. Legg Jr. have suffered physical and emotional injuries and the other damages alleged herein.

160. The conduct of the individual Defendants was malicious, oppressive, and in conscious disregard of Plaintiffs' rights, justifying an award of punitive damages against them.

**TENTH CLAIM FOR RELIEF**
**Assault**
**(Against All Defendants)**

161. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 160 as though fully set forth herein.

162. This claim is brought by all Plaintiffs against all Defendants.

163. Assault is the intentional creation of a reasonable apprehension of imminent harmful or offensive contact.

164. Defendant officers committed assault against all Plaintiffs when they intentionally drew and pointed loaded firearms directly at them, creating a reasonable apprehension of imminent deadly force.

165. The pointing of loaded firearms at Plaintiffs, with the officers' fingers on or near the triggers, created a reasonable apprehension in Plaintiffs that they were about to be shot. This apprehension was particularly acute for the minor children who witnessed officers shoot and kill another person with those same firearms.

166. The officers' act of pointing firearms at Plaintiffs was intentional and without legal justification or privilege.

167. Under California Government Code sections 820 and 815.2, Defendant City of Stockton is vicariously liable for these assaults committed by its employees within the scope of their employment.

168. As a direct and proximate result of these assaults, Plaintiffs have suffered severe emotional distress and the other damages alleged herein.

169. The conduct of the individual Defendants was malicious, oppressive, and in conscious disregard of Plaintiffs' rights, justifying an award of punitive damages against them.

**ELEVENTH CLAIM FOR RELIEF**
**False Imprisonment**
**(Against All Defendants)**

170. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 169 as though fully set forth herein.

171. This claim is brought by Plaintiffs E.P. and Luis F. Legg Jr. against all Defendants.

172. False imprisonment is the unlawful detention of a person without consent.

173. Defendant officers falsely imprisoned Plaintiff E.P. when they seized him, handcuffed him, and detained him for several hours without legal justification, without his consent, and without the consent of his parent or guardian.

174. Defendant officers falsely imprisoned Plaintiff Luis F. Legg Jr. when they seized him, handcuffed him, and detained him without legal justification or consent.

175. These detentions were accomplished by physical restraint (handcuffing) and by the officers' assertion of authority in circumstances where Plaintiffs reasonably believed they were not free to leave.

176. The detentions were without legal justification or privilege. The officers lacked probable cause or even reasonable suspicion to believe that either Plaintiff had committed any crime.

177. Under California Government Code sections 820 and 815.2, Defendant City of Stockton is vicariously liable for the false imprisonments committed by its employees within the scope of their employment.

178. As a direct and proximate result of these false imprisonments, Plaintiffs E.P. and Luis F. Legg Jr. have suffered emotional and psychological injuries and the other damages alleged herein.

179. The conduct of the individual Defendants was malicious, oppressive, and in conscious disregard of Plaintiffs' rights, justifying an award of punitive damages against them.

**TWELFTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress**
**(Against All Defendants)**

180. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 179 as though fully set forth herein.

181. This claim is brought by all Plaintiffs against all Defendants.

182. Defendant officers engaged in extreme and outrageous conduct when they:

a. Pointed loaded firearms directly at innocent bystanders including young children in a residential neighborhood without justification;

b. Shot and killed a person in front of multiple witnesses including four minor children;

c. Seized, handcuffed, and detained a child for hours without permitting contact with his parent;

d. Created a scene of violence and terror in a peaceful residential neighborhood where families and children were gathered; and

e. Acted with reckless disregard for the severe psychological harm their conduct would inflict on the witnesses, particularly the children.

183. This conduct was extreme and outrageous and exceeded all bounds of decency tolerated in a civilized society.

184. The Defendant officers intended to cause emotional distress or acted with reckless disregard of the probability that their conduct would cause severe emotional distress to Plaintiffs. The officers knew or should have known that pointing guns at children, shooting someone in front of children, and detaining a child for hours would cause severe psychological trauma.

185. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and continue to suffer severe emotional distress, including post-traumatic stress disorder, anxiety, depression, nightmares, fear of police, hypervigilance, and other psychological injuries that have required and will continue to require professional treatment.

186. Under California Government Code sections 820 and 815.2, Defendant City of Stockton is vicariously liable for the intentional infliction of emotional distress by its employees acting within the scope of their employment.

187. The conduct of the individual Defendants was malicious, oppressive, and in conscious disregard of Plaintiffs' rights, justifying an award of punitive damages against them.

## THIRTEENTH CLAIM FOR RELIEF
## Negligent Infliction of Emotional Distress
## (Against All Defendants)

188. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 187 as though fully set forth herein.

189. This claim is brought by all Plaintiffs against all Defendants. Each Plaintiff asserts this claim as a direct victim of Defendants' negligence, based upon Defendants' negligent conduct directed at that Plaintiff personally and upon the resulting placement of that Plaintiff in peril of death or serious bodily injury.

190. This claim does not depend upon, and Plaintiffs do not plead it upon, any relationship between Plaintiffs and Rocco Robinson. The duty Defendants owed to each Plaintiff arose from Defendants' own conduct directed at that Plaintiff: pointing a loaded firearm at each Plaintiff, seizing and detaining Plaintiffs E.P. and Luis F. Legg Jr., striking Plaintiff Katalina Arellano with a baton, and discharging firearms in the immediate presence of Plaintiffs in a residential cul-de-sac.

191. Each Plaintiff was himself or herself placed in peril of death or serious bodily injury by Defendants' conduct. One or more Defendant officers pointed loaded firearms directly at each Plaintiff at close range, with fingers on or near the triggers, while each Plaintiff stood unarmed and non-threatening in or immediately outside a residence. Each Plaintiff reasonably feared for his or her own life and physical safety.

192. Defendant officers then discharged their firearms sixteen times within feet of Plaintiffs, including the four minor children. The serious emotional distress suffered by each Plaintiff was caused by Defendants' negligent conduct directed at that Plaintiff personally and by the peril in which that conduct placed that Plaintiff, and not solely by that Plaintiff's perception of injury to another person.

193. The serious emotional distress suffered by each Plaintiff was a foreseeable consequence of Defendants' conduct. It is foreseeable that a person at whom a police officer points a loaded firearm without justification, and in whose immediate presence the officer then discharges that firearm sixteen times, will suffer serious emotional distress. The distress suffered by each Plaintiff is beyond that which would be anticipated in a disinterested witness.

194. Defendant officers owed a duty of reasonable care to Plaintiffs. This duty included the duty not to create unreasonable risks of harm to innocent bystanders, the duty to use tactics and force that were reasonable under the circumstances, the duty to protect bystanders including children from foreseeable psychological trauma, and the duty to comply with constitutional requirements in their conduct.

195. Defendant officers breached these duties through their negligent and reckless conduct, including:

a. Negligently creating a dangerous and traumatic situation by rushing into a residential neighborhood with guns drawn without adequate assessment of the situation;

b. Negligently employing tactics that unnecessarily escalated the situation and created the circumstances that led to the shooting;

c. Negligently failing to consider the presence of families and children in the immediate area before employing violent tactics;

d. Negligently using excessive and unreasonable force;

e. Negligently failing to employ de-escalation techniques and alternatives to force;

f. Negligently shooting and killing an individual in front of multiple witnesses including young children when the killing was unnecessary and avoidable; and

g. Negligently subjecting bystanders, particularly children, to foreseeable severe psychological trauma.

196. Defendant City of Stockton negligently failed to adequately train, supervise, and discipline its officers, as alleged above, and these failures were a substantial factor in causing the harm to Plaintiffs.

197. As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered severe emotional distress as alleged herein.

198. Under California Government Code sections 820 and 815.2, Defendant City of Stockton is liable for the negligence of its employees committed within the scope of their employment.

**FOURTEENTH CLAIM FOR RELIEF**
**Negligence**
**(Against All Defendants)**

199. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 198 as though fully set forth herein.

200. This claim is brought by all Plaintiffs against all Defendants.

201. Defendant officers owed a duty of reasonable care to Plaintiffs. This duty arose from the officers' role as peace officers, their presence and actions in the residential

neighborhood where Plaintiffs lived and were gathered, and the general duty to refrain from conduct that creates unreasonable risks of harm to others.

202. The duty of reasonable care owed by Defendant officers to Plaintiffs included, without limitation:

a. A duty to use objectively reasonable force;

b. A duty not to point firearms at individuals unless objectively reasonable and justified by the circumstances;

c. A duty not to seize or detain individuals without reasonable suspicion or probable cause;

d. A duty to employ reasonable tactics that do not unnecessarily create danger or increase risks to bystanders;

e. A duty to consider and protect the safety and psychological well-being of innocent bystanders, particularly children;

f. A duty to use de-escalation techniques and alternatives to force when feasible;

g. A duty to assess situations carefully before employing force or other tactics likely to cause harm; and

h. A duty to comply with constitutional requirements in all interactions with civilians.

203. Defendant City of Stockton, through its policymakers, owed duties to Plaintiffs including:

a. A duty to adopt reasonable policies governing the use of force, detention of individuals, and protection of bystanders;

b. A duty to provide adequate training to officers on use of force, constitutional requirements, tactics, and protection of vulnerable persons;

c. A duty to adequately supervise officers to ensure compliance with constitutional and legal requirements;

d. A duty to investigate and discipline officers who engage in misconduct or violate policies; and

e. A duty to take reasonable measures to prevent foreseeable harm to civilians resulting from officers' conduct.

204. Defendant officers breached their duties of care through the conduct alleged above, including pointing firearms at innocent persons including children without justification, using excessive force, unlawfully seizing and detaining individuals, employing unreasonable tactics, failing to consider the presence of children and families, and failing to use de-escalation techniques or alternatives to force.

205. Defendant City of Stockton breached its duties through the failures to train, supervise, establish adequate policies, and discipline officers as alleged above.

206. As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered the injuries and damages alleged herein.

207. Under California Government Code sections 820 and 815.2, Defendant City of Stockton is liable for the negligence of its employees committed within the scope of their employment.

**FIFTEENTH CLAIM FOR RELIEF**
**Discrimination on the Basis of Race**
**(U.S. Const., Amend. XIV; 42 U.S.C. § 1983)**
**(Against All Defendants)**

208. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 207 as though fully set forth herein.

209. This claim is brought by Plaintiffs JULINDA KIRBY, E.P., Y.P., and S.P. against all Defendants.

210. The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from discriminating against individuals on the basis of race. Under 42 U.S.C. § 1983, Plaintiffs may seek redress for violations of constitutional rights committed under color of state law.

211. Rocco Robinson was a young man of mixed race whose physical appearance—including his height, dark complexion, strong physique, and African-textured hair—caused him to be perceived as African American. The Kirby/Perez family, including Plaintiffs Julinda Kirby and her children, are persons of Hispanic/Latino ethnicity and were known to Defendant officers to reside in the neighborhood.

212. On information and belief, Defendant officers Kyle Ribera and Ruben Rillon targeted Mr. Robinson for a "proactive vehicle checkout" based on racial profiling, specifically his perceived race as a young Black man sitting in a vehicle in a predominantly minority residential neighborhood. No crime was in progress or had been reported. There was no articulable reasonable suspicion justifying the stop.

213. The Stockton Police Department has a documented pattern and practice of using excessive and deadly force disproportionately against African American and minority residents. As alleged herein, Defendant Officer Kyle Ribera previously shot and killed Tracy Gaeta, an African American woman, in February 2022, firing 33 rounds into her vehicle. The Department's history of officer-involved shootings, as detailed in the Gaeta v. City of Stockton complaint and in the instant pleading, demonstrates a pattern of racially discriminatory policing, including the shootings of Donald Haynes, Colby Friday, Antwaune Burrise Sr., James Rivera Jr., Luther Brown, Matautu Nuu, and others—the overwhelming majority of whom were African American.

214. Defendant officers' conduct toward Plaintiffs was motivated in substantial part by race. The officers' immediate escalation to drawn weapons, hostile commands, and use of deadly

force against Mr. Robinson—who was unarmed and engaged in no criminal activity—was disproportionate to any legitimate law enforcement objective and was substantially motivated by the officers' perception of Mr. Robinson's race.

215. The officers' treatment of the minority Plaintiffs -- including pointing loaded firearms at minor children E.P., Y.P., and S.P. and at their mother Julinda Kirby, and detaining E.P. in handcuffs for hours without water, food, or access to bathroom facilities -- was similarly disproportionate and was substantially motivated by Plaintiffs' perceived race and ethnicity.

216. Defendant City of Stockton, through the Stockton Police Department and its policymakers including Chief Stanley McFadden, maintained policies, customs, and practices that tolerated, encouraged, and failed to correct racially discriminatory policing, including: (a) conducting pretextual "proactive vehicle checkouts" disproportionately targeting minority residents; (b) failing to discipline officers involved in shootings of minority civilians; (c) failing to train officers on implicit bias and non-discriminatory policing; (d) maintaining a code of silence that protected officers engaged in discriminatory conduct; and (e) failing to track, monitor, or address racial disparities in use of force incidents.

217. The discriminatory conduct of Defendant officers was intentional and purposeful, or at minimum demonstrated deliberate indifference to the constitutional rights of Plaintiffs and Mr. Robinson not to be subjected to differential treatment based on race.

218. As a direct and proximate result of Defendants' racially discriminatory conduct in violation of the Equal Protection Clause of the Fourteenth Amendment, Plaintiffs have suffered the injuries and damages alleged herein.

219. The conduct of individual Defendant officers was willful, malicious, oppressive, and committed with reckless disregard for Plaintiffs' constitutional rights, entitling Plaintiffs to

punitive damages against Defendants Ribera, Rillon, and Does 1-10 in their individual capacities.

## VII. DAMAGES

220. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have suffered and continue to suffer severe injuries and damages, including:

a. Severe emotional distress, trauma, anxiety, fear, and psychological injuries;

b. Post-traumatic stress disorder requiring ongoing treatment;

c. Depression and sleep disturbances including nightmares and night terrors;

d. Fear of police and authority figures;

e. Hypervigilance and exaggerated startle responses;

f. Loss of sense of safety and security in their own home and neighborhood;

g. Interference with normal childhood development and family relationships (for the minor Plaintiffs);

h. Past and future medical and mental health treatment expenses;

i. Loss of enjoyment of life;

j. Physical manifestations of emotional distress; and

k. Other general and special damages according to proof.

221. The minor Plaintiffs have suffered particularly severe and lasting trauma. They witnessed the shooting death of a person at close range. They had loaded firearms pointed directly at them by police officers. They observed the violence and aggression of the officers. E.P. was handcuffed and detained for hours without access to his mother or basic necessities.

These experiences have fundamentally altered these children's sense of safety and their ability to trust authority figures. The trauma they have suffered will require ongoing treatment and will affect them for years to come.

222. The conduct of the individual Defendants was malicious, oppressive, fraudulent, and in conscious disregard of Plaintiffs' rights, justifying an award of punitive damages sufficient to punish the individual Defendants and deter similar conduct in the future.

223. Plaintiffs are entitled to reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, California Civil Code section 52.1, and other applicable provisions of law.

**VIII. JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants as follows:

1. For compensatory damages in an amount to be proven at trial;
2. For punitive damages against the individual Defendants (excluding Defendant City of Stockton) in an amount sufficient to punish and deter similar conduct;
3. For the statutory civil penalty of $25,000 per violation under California Civil Code section 52.1;
4. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, California Civil Code section 52.1, and other applicable provisions of law;
5. For pre-judgment and post-judgment interest as allowed by law;
6. For such other and further relief as the Court deems just and proper.

DATED:September 15, 2026

LAW OFFICE OF JOSEPH MANUEL
By /s/Joseph Manuel
Joseph Manuel
Attorney for Plaintiff(s)